UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LIONEL MENDOZA ET AL.                                CIVIL ACTION

V.                                                   NO. 15-1455

TRACEY HICKS ET AL.                                  SECTION "F"

ORDER & REASONS

Before the Court are two motions: 1) Berkshire Hathaway Homestate Insurance Company's motion for partial summary judgment, and 2) Canal Insurance Company and Wyatt Trucking, Inc.'s motion for partial summary judgment. The motions seek opposite judgments on the same insurance dispute; thus, the Court addresses them together. For the reasons that follow, Berkshire's motion is GRANTED and Canal and Wyatt's motion is DENIED.

**Background**

This case arises from a motor vehicle accident in which the plaintiff, Lionel Mendoza, was injured.

On October 14, 2014, the defendant, Tracey Hicks, was driving an 18-wheeler on Interstate 12 in Louisiana when his trailer dislodged and struck an 18-wheeler driven by Lionel Mendoza. Mendoza was forced off the road and suffered injuries from the crash.

The relationship between the numerous parties, however, complicates the facts. At the time of the crash, Hicks was driving a truck owned by Wyatt Trucking. But Hicks was transporting goods

1

under to an owner-operator agreement between C&R Transport and BAC Trucking. Pursuant to that agreement, C&R was the "Carrier" who leased a truck from BAC, the "Owner Operator." Complicating matters further, the truck that C&R leased from BAC broke down. Thus, BAC borrowed a truck from Wyatt to fulfill its obligations under the agreement between C&R and BAC. Thus, Hicks was driving a truck that BAC borrowed from Wyatt at the time of the accident.

In this motion, the parties seek resolution of an insurance dispute. Particularly, the Court must determine whether Berkshire's policy for C&R Trucking extended coverage to the Wyatt truck. Berkshire, who insures C&R, claims that its policy does not cover the truck owned by Wyatt. Canal, who insures Wyatt, and the plaintiff, Lionel Mendoza, submit that Berkshire's policy does extend coverage to Wyatt's truck. Resolution of this motion requires interpretation of the Berkshire insurance policy.

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable

2

jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Finally, in evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Id. at 255.

## II. Conflict of Law

Before turning to the Berkshire policy, the Court must determine which state's law applies. Berkshire contends that, because the Berkshire policy was issued in Alabama to an Alabama resident, the laws of Alabama apply. Canal responds that Louisiana law applies because the accident occurred in Louisiana, and Louisiana has a specific statute that mandates insurance coverage of temporary substitute vehicles, while Alabama does not. Alternatively, Canal asserts that the Court should apply Louisiana law because Louisiana public policy would be seriously impaired by applying Alabama law.

In deciding which state's substantive law governs a dispute, the Court must apply the choice-of-law rules of the state in which the action was filed; in this case, Louisiana. Abraham v. State Farm Mutual Auto Insurance Co., 465 F.3d 609, 611 (5th Cir. 2006).

Louisiana Civil Code articles 3515 and 3537 explain that disputes involving contacts with multiple states are "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code arts. 3515, 3537. Article 3537 provides factors to determine which state's policies would be most seriously impaired:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537.

Article 3515 lists similar factors to determine which state's policies would be most seriously impaired:

> (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

The Louisiana Supreme Court has offered guidance as to how these principles apply to insurance contracts. In Champagne v. Ward, the state's high court held that Mississippi law governed the interpretation of an uninsured motorist policy of a Mississippi

4

resident who was involved in an automobile accident in Louisiana. 2003-3211 (La. 1/19/05); 893 So. 2d 773. There, the Mississippi resident sued the other driver, a Louisiana resident, in a Louisiana court to recover uninsured motorist benefits. The plaintiff's insurance policy was issued and negotiated in Mississippi. Applying articles 3515 and 3537, the Louisiana Supreme Court first identified the competing policies of Louisiana and Mississippi. The Court explained that Louisiana's purpose in regulating uninsured motorist coverage is to promote full recovery for innocent tort victims. The Court identified Mississippi's policy interests in regulating its insurance industry and its contractual obligations. Even though applying Mississippi law undermined Louisiana's interest in protecting tort victims, the Court concluded that Mississippi's interest in regulating its insurance industry outweighed Louisiana's tort policy.

Applying the state court's guidance in Champagne, the Fifth Circuit reached a similar conclusion in Abraham v. State Farm Mutual Auto Insurance Co., 465 F.3d 609 (5th Cir. 2006). There, the Court held that Mississippi law governed the plaintiff's bad faith insurance claim resulting from an automobile accident that occurred in Louisiana. The plaintiff was a dual citizen of Mississippi and Louisiana; however, his insurance policy was formed in Mississippi, it was a Mississippi contract, and the vehicle was garaged and presumably registered in Mississippi.

5

Relying on Champagne, the Court reasoned, "Mississippi's relationship to this dispute and its policy interest in upholding the justified expectations of parties to Mississippi insurance contracts is no less significant here than it was in *Champagne* . . . ." Id. at 614. Applying Louisiana Civil Code articles 3515 and 3537, the Court concluded that "Mississippi—the state where the insurance policy was negotiated and formed, where the insured vehicle was licensed and garaged, and where [the plaintiff] had dual citizenship—bears the closer relationship to the parties and the dispute." The same reasoning applies here.

The only Louisiana contact present on this record is that the trucking accident occurred in Louisiana. Natasha Adams d/b/a C&R Transport is an Alabama resident. The Berkshire policy covering C&R was issued in Alabama through an Alabama insurance agent. Hicks, the driver, was returning to Alabama from a Texas delivery site at the time of the accident. Furthermore, Wyatt trucking, the owner of the truck that caused the accident, is domiciled in Alabama, and the plaintiff, Lionel Mendoza, is a resident of Texas. None of the parties to this dispute are residents of Louisiana, and the particular insurance policy in question was drafted, negotiated, and formed in Alabama.

Canal contends that Louisiana law should apply because extending coverage to temporary substitute vehicles is Louisiana public policy. Unlike Alabama, Louisiana has a specific statute

6

that requires insurers to provide coverage to temporary substitute vehicles. The purpose of the statute, Canal claims, is to permit an insured to continue to operate another motor vehicle should the designated covered vehicle be temporarily out of commission. Canal urges that Alabama policy would not be impaired by applying the Louisiana statute because Alabama has not taken a strong public policy stance on temporary substitutes by enacting a specific statute. Canal's position is unpersuasive.

As in Champagne, Alabama has an important interest in regulating its insurance industry and upholding its contractual obligations. The courts in both Champagne and Abraham applied out-of-state law on facts that had *even more* contacts to Louisiana than the facts presented here. Moreover, Louisiana's public policy interest in protecting innocent tort victims likely exceeds any interest it has in providing coverage to temporary substitute vehicles. The factors enumerated in Louisiana Civil Code articles 3537 and 3515 weigh heavily in favor of applying Alabama law. Accordingly, Alabama law governs the interpretation of the Berkshire policy.

### III. The Berkshire Policy

The Alabama Supreme Court, in Lambert v. Coregis Insurance Co., recited Alabama's rules for interpreting insurance contracts:

> General rules of contract law govern an insurance contract. The court must enforce the insurance policy as written if the terms are unambiguous. Whether a

7

>provision of an insurance policy is ambiguous is a question of law. To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company. However, the parties cannot create ambiguities by setting forth different interpretations or [by inserting] . . . strained or twisted reasoning. Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would give it. The court should not define words it is construing based on technical or legal terms.

950 So. 2d 1156, 1161 (Ala. 2006)(quoting Safeway Insurance Co. v. Herrera, 912 So. 2d 1140, 1143 (Ala. 2005)(internal citations omitted). If there is no ambiguity, "courts must enforce insurance contracts as written and cannot defeat express provisions in a policy . . . by making a new contract for the parties." Shrader v. Employers Mutual Casualty Co., 907 So. 2d 1026, 1034 (Ala. 2005).

The Berkshire policy provision in question reads:

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Liability Coverage is provided by this coverage form, the following types of vehicles are also covered "autos" for Liability Coverage:
. . .

3. Any "auto" you do not own while used with permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
    a. Breakdown;
    b. Repair;
    c. Servicing;
    d. "Loss"; or
    e. Destruction.

Berkshire contends that, in order for a temporary substitute auto to be covered, the policy requires that the disabled vehicle be owned by C&R Transport, the named insured. The disabled vehicle in this case was owned by BAC Trucking – C&R was merely leasing the truck from BAC pursuant to the owner-operator agreement. Accordingly, because C&R did not own the auto that was temporarily out of service, Berkshire submits that the policy does not provide coverage to the temporary substitute that was involved in the accident.

Canal and Mendoza respond that the Berkshire policy is ambiguous because it does not define the term "own." Canal and Mendoza cite the Federal Motor Carrier Safety Regulations' definition of "owner" to support its position. According to the FMCSR an "owner" is "a person (1) to whom title to equipment has been issued, or (2) who, without title has the right to exclusive use of the equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person." FMCSR § 376.2(d). Applying this definition, Canal and Mendoza submit that C&R did "own" the truck that it leased from BAC because it had exclusive use of it. Their contentions are wanting.

The language of the Berkshire policy provision is unambiguous. Alabama law is clear: "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence

9

would give it." Lambert, 950 So. 2d at 1161. Moreover, "The court should not define words it is construing based on technical or legal terms." Id. Canal and Mendoza offer a technical or legal term for the word "owner," and ask the Court to apply that definition to the word "own" in the Berkshire policy. This argument directly contradicts Alabama's law on interpretation of insurance contracts.[1]

C&R leased the truck from BAC; therefore, under its ordinary usage, C&R did not "own" the truck. The Berkshire policy provides that, if C&R must temporarily substitute *a vehicle that it owns* due to a breakdown, then Berkshire will provide coverage to the temporary substitute. Here, BAC owned the vehicle that broke down, not C&R. Therefore, Berkshire's policy does not cover the temporary substitute. Absent ambiguity, the Court must enforce the insurance contract as written.[2] Shrader, 907 So. 2d at 1034.

Finally, Canal contends that the Berkshire policy's out-of-state coverage extensions require Berkshire to provide the minimum type of coverage required by Louisiana, including temporary

---

[1] Mendoza claims that under Alabama law, "Where terms have a particular technical meaning in an industry, that meaning will apply to those terms used in a contract within that industry." However, Mendoza offers no support for his contention. Berkshire, on the other hand, offers persuasive support for the opposite.

[2] Mendoza contends that this outcome would "turn insurance for interstate motor carriers on its head." This assertion, however, is rather an overstatement at best. As Canal adamantly points out, under Louisiana law, insurers are required by statute to provide coverage for temporary substitutes regardless of ownership.

10

substitute coverage. However, the out-of-state coverage extensions only apply to "covered autos." For the reasons above, the Wyatt truck was not a covered auto. Therefore, the out-of-state extensions do not apply.

Accordingly, IT IS ORDERED that Berkshire's motion for partial summary judgment is GRANTED.

IT IS FURTHER ORDERED that Canal and Wyatt's motion for partial summary judgment is DENIED.

New Orleans, Louisiana, March 2, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE